**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIACHESLAV IVANOV, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP,<br>in his official capacity as the President of the United States, *et. al.*,<br><br>Defendants. | Civil Case No. 26-915 (RJL) |
| VIKTORIIA CHERSAK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF STATE, *et. al.*,<br><br>Defendants. | Civil Case No. 26-968 (RJL) |
| NAMI SAITO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF STATE, *et. al.*,<br><br>Defendants. | Civil Case No. 26-2272 (RJL) |

**MEMORANDUM ORDER**
(October 28, 2026) [Dkt. #53, 66]

Before the Court are plaintiffs' motions to enforce the August 25, 2026 Order and related requests for civil contempt proceedings and the reservation of Diversity Visa ("DV") numbers. *See* Pls.' Emergency Mot. to Enforce the Court's Aug. 25, 2026 Order ("Pls.' First Mot.") [Dkt. #53]; Pls.' Suppl. Mot. to Enforce Aug. 25, 2026 Order & for Civil Contempt Sanctions ("Pls.' Second Mot.") [Dkt. #66]. Plaintiffs are DV selectees and their derivative beneficiaries seeking to enforce this Court's prior Order against the State Department and U.S. Citizenship and Immigration Services ("USCIS") (together, "defendants").

I agree that defendants' initial efforts to implement the August 25 Order raised legitimate concerns. However, the supplemented record shows that both the State Department and USCIS made substantial progress in adjudicating the named plaintiffs' DV applications. Notably, the Order required the State Department, "to the extent practicable . . . [to] take reasonable steps to reconsider" DV applications refused solely due to one of the enjoined policies. Order [Dkt. #52] at 3.[1] The Order did not require the State Department to adjudicate every application before the fiscal year ended. Accordingly, I will **DENY** plaintiffs' motions to enforce the Order and related requests for relief.

[1] The Order also directed the USCIS to "resume ordinary adjudication" of the named plaintiffs' pending adjustment-of-status applications without applying the USCIS Pause. Order at 3. However, plaintiffs concede that "USCIS appears to be in compliance with that order," Pls.' First Mot. at 5 n.2, and do not raise USCIS compliance issues in their supplemental motion. As such, this Memorandum Order addresses only plaintiffs' allegations of noncompliance by the State Department.

## BACKGROUND

On August 25, 2026, I held that three agency actions were unlawful under the Administrative Procedure Act ("APA"): (1) the USCIS December 19, 2025 directive placing on hold adjustment-of-status applications filed by DV selectees present in the United States ("the USCIS Pause"); (2) the State Department's December 20, 2025 directive requiring consular officers to refuse DV visa applications under Section 221(g) of the Immigration and Nationality Act ("INA") ("the State DV Pause"); and (3) the State Department's January 14, 2026 directive requiring consular officers to refuse under Section 221(g) of the INA immigrant visa applications filed by nationals of seventy-five countries ("the Public Charge Pause"). *See* Mem. Op. [Dkt. #51] at 2–3.

I then enjoined the State Department and USCIS from applying the three Pauses to the named plaintiffs, and "to the extent practicable," ordered the State Department to "take reasonable steps to reconsider . . . the applications of named plaintiffs and derivative beneficiaries who were refused under [Section 221(g) of the INA] solely pursuant to either policy." Order at 3. I also ordered defendants to submit status reports every two weeks through the end of fiscal year 2026. *Id.*

On September 2, 2026, plaintiffs filed their first emergency motion to enforce the Court's order. *See* Pls.' First Mot. Plaintiffs claimed the State Department had "taken no public steps to reconsider named plaintiffs' applications and has not resumed interviewing named plaintiffs who have not yet been interviewed on their 2026 DV applications." *Id.* at 6. In response, defendants represented that neither the State Department nor USCIS was applying the challenged Pauses, and that the State Department was "developing guidance

for regional posts regarding implementation of the Order." *See* Defs.' Opp'n to Pls.' Emergency Mot. to Enforce [Dkt. #60] at 4. In their next status report on September 22, 2026, defendants noted that "84 Diversity Visa application[s] have been approved for issuance" and that "USCIS has fully adjudicated 106 out of 125 Plaintiffs' adjustment applications." Defs.' Status Report [Dkt. #65] at 4–5.

On September 23, plaintiffs filed a supplemental motion to enforce the August 25 Order and moved for civil contempt sanctions. *See* Pls.' Second Mot. Plaintiffs requested that the Court, "(1) find that Defendants have failed to comply with the August 25, 2026 Order; (2) order Defendants immediately to complete the reconsideration, adjudication, and, if applicants are eligible, issuance of the named plaintiffs' diversity visas before September 30, 2026 . . . (3) order Defendants to show cause why they should not be held in civil contempt; and (4) as a coercive and remedial contempt sanction . . . order Defendants immediately to reserve, before September 30, 2026, the diversity visa numbers attributable to the named plaintiffs pending resolution of the contempt." *Id.* at 2–3.

The Government filed an opposition to plaintiffs' supplemental motion to enforce on September 28, 2026. *See* Defs.' Am. Opp'n to Pls.' Emergency Mot. to Enforce ("Defs.' Opp'n") [Dkt. #70]. In addition to documenting its compliance with the August 25 Order, the Government stated that, "[s]hould the Court require one, the Department of State would be amenable to providing a declaration offering," updated visa issuance figures for the plaintiffs in the *Ivanov*, *Chersak*, and *Saito* consolidated cases. *Id.* at 14 n.3. I ordered the Government to file such a declaration, *see* Min. Order (Oct. 1, 2026), which the Government complied with on October 9, 2026, *see* Defs.' Response to the Court's Order

[Dkt. #75]. Having reviewed defendants' status reports and supplemental declarations, I now turn to plaintiffs' motions to enforce the August 25 Order and their related requests for relief.

## Legal Standard

"As one of their myriad responsibilities, district courts retain the 'authority to enforce the terms of their mandates.'" *Resolute Forest Prods., Inc. v. U.S. Dep't of Agric.*, 427 F. Supp. 3d 37, 41 (D.D.C. 2019) (quoting *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019)). Courts may grant a motion to enforce where the "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Id.* However, if a plaintiff "has received all relief required by that prior judgment," the motion to enforce should be denied. *Id.*

Where a party fails to comply with a court order, the court may hold that party in civil contempt or direct it to show cause why it should not be held in contempt. *See Potter v. Dist. of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (noting that federal courts possess "inherent power to enforce compliance with their lawful orders through civil contempt"). The party moving for civil contempt "faces a heavy burden" and must show "by clear and convincing evidence" that the alleged contemnor has violated a "clear and unambiguous" order of the court. *Id.* However, "[t]he burden is lighter . . . on a party moving for an order to show cause than it is for a party moving directly for civil contempt." *L.G.M.L. v. Mullin*, 2026 WL 2150507, at *2 (D.D.C. July 27, 2026). "A party moving for an order to show cause must put forward 'some indication that sufficient evidence exists that the Court *might* find evidence sufficient to hold [the alleged contemnor] in contempt.'" *Id.* (quoting *Stewart*

*v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002)).

## Analysis

Plaintiffs have not made the requisite showing to warrant an order to show cause, even under the "lighter" standard applicable to that request. The August 25 Order prohibited application of the challenged Pauses to the named plaintiffs and their beneficiaries and required the State Department, "to the extent practicable," to "take reasonable steps to reconsider" applications refused solely pursuant to those policies. Order at 3. I did not order, and the State Department did not guarantee, that each plaintiff's application be reconsidered.

The State Department's initial pace, as detailed in its first Status Report on September 8, 2026, was disappointing, particularly given the approaching fiscal year deadline. *See* Defs.' Status Report [Dkt. #55] (reporting that the State Department had not yet approved or issued any visas for the *Ivanov*, *Chersak*, or *Saito* plaintiffs). However, the final figures materially change the picture presented in the defendants' status reports and the plaintiffs' supplemental motion. Across the three cases, the State Department reports adjudicating 1,359 applications[2] during the reporting period: 1,115 visas were approved for issuance and 244 were refused. *See* Decl. of John Armstrong ("Armstrong Decl.") [Dkt. #75-1] ¶¶ 6–8. Of the 1,115 visas that were approved for issuance, 1,100 visas were printed and issued by September 30, four of which were subsequently revoked on October 2, 2026. *Id.*

[2] The total of 1,359 comprises the applications refused or approved for issuance for the *Ivanov* plaintiffs (164 refused and 565 approved), *Chersak* plaintiffs (27 refused and 181 approved), and *Saito* plaintiffs (53 refused and 369 approved), including derivative beneficiaries. *See* Armstrong Decl. ¶¶ 6–8.

As plaintiffs correctly observe, the declaration does not contain information on applications not adjudicated during the reporting period. *See* Pls.' Response to Defs.' Oct. 9, 2026 Response to the Court's Order & Request for Limited Reporting Directives [Dkt. #76] at 2. Plaintiffs also identify one plaintiff, Marco Roman, whose interview was cancelled after the August 25 Order and, according to his declaration, never rescheduled despite repeated inquiries. *Id.* at 2–3. While frustrating for the plaintiff, that account does not establish that the cancellation or failure to reschedule resulted from the State Department's continued application of an enjoined policy. Nor did the Order require defendants to complete every application by September 30. *See also Nahardani v. Blinken*, 2022 WL 4474054, at *1 (D.D.C. Sept. 26, 2022) (noting that the State Department does not have a "statutory duty" to adjudicate DV applications by September 30). The absence of a final adjudication for every plaintiff does not establish noncompliance with an order that imposed no such requirement. Nor do the reporting gaps identified by plaintiffs undermine the progress reflected in the record or provide a sufficient basis to order defendants to show cause.

Plaintiffs compare the State Department's progress in this case to the State Department's response to a similar injunction in 2020. *See* Mem. of P. & A. in Supp. of Pls.' Suppl. Mot. to Enforce ("Pls.' Mem.") [Dkt. #66-1] at 1 (referring to the injunction ordered in *Gomez v. Trump,* 490 F. Supp. 3d 276, 281 (D.D.C. 2020)). Plaintiffs claim that in response to a "materially identical injunction," the State Department issued "more than three thousand visas in three weeks." *Id.* However, the volume of applications processed under another injunction, involving a different applicant population and circumstances,

does not by itself establish what was "reasonable" here. Nor does the updated record support plaintiffs' contention that "refusals outpace issuances nearly nine-to-one." *See* Pls.' Mem. at 6. Indeed, the final figures show 1,100 issuances against 244 refusals. Ultimately, the relevant inquiry remains compliance with *this* Court's particular directives, not whether defendants matched the processing totals in another case.

Plaintiffs also contend that defendants effectively continued to apply the Pauses through alternative means, specifically by providing consular officers with new public charge training which created a "bottleneck" for processing. *See* Pls.' Mem. at 7. The State Department's cable, however, instructed all consular posts that the challenged State Department Pauses were "**NO LONGER** in effect" and that applicants could not be refused under Section 221(g) of the INA pursuant to either Pause. *See* Cable [Dkt. #65-1] at 2. Although plaintiffs' skepticism regarding the delays caused by the new public charge training is understandable, the present record—and especially the final figures detailed in the Armstrong Declaration—does not show "by clear and convincing evidence" that the State Department continued to apply the enjoined policies after the August 25 Order. *Potter*, 126 F.4th at 723.

Finally, plaintiffs seek reservation of visa numbers as a "remedial contempt sanction." *See* Pls.' Mem. at 8–9. Our Circuit has held that district courts lack authority to require the State Department to reserve DV numbers, continue processing applications, or issue diversity visas beyond the fiscal year deadline. *See Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024). Plaintiffs seek to distinguish that holding by characterizing the reservation of DV numbers in this case as a "contempt sanction" rather than direct relief

extending their statutory eligibility. *See* Pls.' Mem. at 8–9. As plaintiffs explain, *Goodluck* expressly left open "whether, if there were such a case of bad faith or undue delay in complying with a timely entered injunction, the district court could issue contempt sanctions against the government even if it could not grant relief directly to visa applicants past the end of the fiscal year." *Goodluck*, 104 F.4th at 929. But leaving open the availability of contempt sanctions does not establish that visa reservation would be a permissible sanction, much less that it is warranted here.

Ultimately, I find that the record does not establish contempt, bad faith, or undue delay in complying with the August 25 Order, and as such contempt sanctions are not warranted. Independently, *Goodluck* forecloses the particular relief plaintiffs seek—reservation of DV numbers beyond the fiscal year deadline—and plaintiffs cannot avoid that limitation by characterizing the requested relief as a remedial sanction.

## CONCLUSION

For the foregoing reasons, plaintiffs' motions to enforce the August 25 Order and their related requests for relief are hereby **DENIED**.

RICHARD J. LEON
United States District Judge